**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **LABORERS' LOCAL 265 PENSION FUND** ) | |
| **and PLUMBERS AND PIPEFITTERS** ) | |
| **LOCAL NO. 572 PENSION FUND,** ) | |
| ) | |
| **Plaintiffs,** ) | **Civil No. 3:13-00046** |
| ) | **Judge Trauger** |
| ) | **Magistrate Judge Knowles** |
| **v.** ) | |
| ) | |
| **iSHARES TRUST, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

ALLEGATIONS OF THE COMPLAINT............................................................................ 4

ARGUMENT ..................................................................................................................... 6

I.     COUNT I FAILS TO STATE A CLAIM UNDER SECTION 36(b) OF THE ICA............ 6

     A.     Plaintiffs Cannot State a Section 36(b) Claim Because the Challenged
          Securities Lending Transactions Are Subject to Section 17 of the ICA ................ 6

     B.     Plaintiffs State No Section 36(b) Claim Against The Individual
          Defendants ........................................................................................................ 7

II.    COUNT II SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE
       RIGHT OF ACTION UNDER SECTION 47(b) OF THE ICA ....................................... 8

III.   COUNT III SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NO
       PRIVATE RIGHT OF ACTION UNDER SECTION 36(a) ............................................ 11

IV.   PLAINTIFFS LACK STANDING TO ASSERT THE DERIVATIVE CLAIMS
       ALLEGED IN COUNTS II AND III OF THE COMPLAINT ........................................ 12

     A.     Plaintiffs Have Failed To Show that Demand Is Futile Under Delaware
          Law .................................................................................................................. 14

     B.     Plaintiffs Have Failed To Show that Demand Is Futile Under Maryland
          Law .................................................................................................................. 18

CONCLUSION...................................................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alexander v. Allianz Dresdner Asset Mgmt. of Amer. Holding, Inc., et al.,*
    509 F. Supp. 2d, 190 (D. Conn. 2007) ...................................................................12

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ..............................................................9, 10, 11, 12

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) ....................................8, 12

*Boyce v. AIM Mgmt. Group, Inc., et al.*, No. H-04-2587, 2006 WL 4671324
    (S.D. Tex. Sept. 29, 2006) ........................................................................12

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984) ...................................................13

*DH2, Inc. v. Athanassiades*, 359 F. Supp. 2d 708 (N.D. Ill. 2005) ...........................12

*In re eBay, Inc., Derivative Litigation*, No. 10-470, 2011 WL 3880924 (D. Del.
    Sept. 2, 2011) ..............................................................................................20

*In re Goldman Sachs Group, Inc. Shareholder Litigation*, No. 5215, 2011 WL
    4826104 (Del. Ch. Oct. 12, 2011) ..........................................................14

*Gonzaga University v. Doe*, 536 U.S. 273 (2002) ..........................................................9

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988), *overruled on other grounds by
Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .............................................17

*Halpert Enterprises, Inc. ex rel. J.P. Morgan Chase & Co. v. Harrison*, 362
    F. Supp. 2d 426 (S.D.N.Y. 2005) ............................................................16

*Hamilton v. Allen*, 396 F. Supp. 2d 545 (E.D. Pa. 2005) ...........................................11, 12

*Hartsel v. Vanguard Group, Inc.*, No. 5394, 2011 WL 2421003 (Del. Ch. June 15,
    2011), *aff'd*, 38 A.3d 1254 (Del.), *cert. denied*, 133 S. Ct. 32 (2012) ..............14, 16

*Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, No. A-06-CA-540,
    2006 U.S. Dist. LEXIS 84028 (W.D. Tex. Nov. 17, 2006), *adopted*, No. A-06-
    CA-540, 2007 U.S. Dist. LEXIS 98853 (W.D. Tex. Jan. 23, 2007) ..............10, 11

*Highland Legacy Ltd. v. Singer*, No. 1566-N, 2006 WL 741939 (Del. Ch. Mar. 17,
    2006) ..............................................................................................................18

*Johnson v. City of Detroit*, 446 F.3d 614 (6th Cir. 2006) .........................................10, 11

*Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991) .................................13

Case 3:13-cv-00046   Document 22   Filed 03/11/13   Page 3 of 27 PageID #: 119

*Krantz v. Prudential Investments Fund Management LLC*, 77 F. Supp. 2d 559 (D.N.J. 1999), *aff'd*, 305 F.3d 140 (3d Cir. 2002) ...................................................2

*Krantz v. Prudential Investments Fund Management LLC*, 305 F.3d 140 (3d Cir. 2002) .................................................................................................................19

*Lukas v. McPeak*, No. 3:11-CV-422, 2012 WL 4359437 (E.D. Tenn. Sept. 21, 2012) .........................................................................................................13, 20

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233 (S.D.N.Y. 2006) ............................................................................................12

*Migdal v. Rowe Price-Fleming International, Inc.*, 248 F.3d 321 (4th Cir. 2001).......................19

*In re Mutual Funds Investment Litigation*, 384 F. Supp. 2d 873 (D. Md. 2005)...........................16

*Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106 (9th Cir. 2010) ...............................................................................................9

*Olesh v. Dreyfus Corp.*, No. CV-94-1664, 1995 WL 500491 (E.D.N.Y. Aug. 5, 1995) ...................................................................................................2

*Protas v. Cavanagh*, No. 6555, 2012 Del. Ch. LEXIS 88 (Del. Ch. May 4, 2012).......................18

*In re Regions Morgan Keegan Securities, Derivative & ERISA Litigation*, 743 F. Supp. 2d 744 (W.D. Tenn. 2010).............................................................11

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Insurance Co.*, 677 F.3d 178 (3d Cir.), *cert. denied*, 133 S. Ct. 529 (2012) ......................................9, 10

*Smith v. Franklin/Templeton Distributors, Inc.*, No. C 09-4775, 2010 U.S. Dist. LEXIS 56516 (N.D. Cal. June 8, 2010) ...................................................10

*Smith v. Oppenheimer Funds Distributor, Inc.*, 824 F. Supp. 2d 511 (S.D.N.Y. 2011) ...............................................................................................12

*Steinberg v. Janus Capital Management, LLC*, 457 F. App'x 261 (4th Cir. 2011) ...................8, 9

*Verkouteren v. BlackRock Financial Management, Inc.*, No. 98 Civ. 4673, 1999 U.S. Dist. LEXIS 10892 (S.D.N.Y. July 20, 1999), *aff'd mem.*, 208 F.3d 204 (2d Cir. 2000)...............................................................................................19

*Weinberg ex rel. BioMed Realty Trust Inc. v. Gold*, 838 F. Supp. 2d 355 (D. Md. 2012) ...............................................................................................20

*Werbowsky v. Collomb*, 362 Md. 581, 766 A.2d 123 (2001) ........................................19

*Wiener v. Eaton Vance Distributors, Inc.*, 2011 WL 1233131 (D. Mass. 2011)....................9, 12

iii

*Wood v. Baum*, 953 A.2d 136 (Del. 2008) ....................................................................18

*In re Xethanol Corp. Derivative Litigation*, No. 06 Civ. 15536, 2007 WL 2331975 (S.D.N.Y. Aug. 16, 2007) ............................................................................16

*Zucker v. Andreesen*, No. 6014, 2012 Del. Ch. LEXIS 135 (Del. Ch. June 21, 2012) ......................................................................................................18

*Zucker v. Federated Shareholder Services Co.*, No. 2:06 cv241, 2007 U.S. Dist. LEXIS 15186 (W.D. Pa. Mar. 5, 2007) ..................................................8

## Statutes

15 U.S.C. § 80a-2(a)(3) ...........................................................................................14, 15

15 U.S.C. § 80a-2(a)(9) ...................................................................................................15

15 U.S.C. § 80a-2(a)(19) .........................................................................................14, 15

15 U.S.C. § 80a-17 ............................................................................................................2

15 U.S.C. § 80a-17(d) ......................................................................................................7

15 U.S.C. § 80a-35(a) ................................................................................................3, 11

15 U.S.C. § 80a-35(b) ..................................................................................................2, 6

15 U.S.C. § 80a-35(b)(3) .................................................................................................8

15 U.S.C. § 80a-35(b)(4) .................................................................................................7

15 U.S.C. § 80a-41 ............................................................................................................9

15 U.S.C. § 80a-46(b) ......................................................................................................3

15 U.S.C. § 80a-46(b)(1) .................................................................................................8

Del. Code Ann. tit. 12, § 3801(d) (West Supp. 2013) ..........................................14, 16

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1

Fed. R. Civ. P. 23.1 ...........................................................................................................1

Fed. R. Civ. P. 23.1(b)(3) ...............................................................................................13

Md. Code Ann., Corps. & Ass'ns § 2-405.3(b) (West 2002) ...........................................19

iv

**Other Authorities**

*Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,840, 2002
    SEC LEXIS 3095 (Dec. 2, 2002)..............................................................................................5

*Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,878, 2002
    SEC LEXIS 3327 (Dec. 27, 2002)..........................................................................................5

Defendants iShares Trust, iShares, Inc., the ETF Defendants,[1] BlackRock Fund Advisors, BlackRock Institutional Trust Company, N.A., Robert S. Kapito and Michael Latham respectfully submit this memorandum of law in support of their motion to dismiss the Verified Complaint (the "Complaint" or "Compl.") pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Defendants iShares Trust and iShares Inc. are investment companies (the "iShares Investment Companies") registered with the Securities and Exchange Commission (the "SEC"). They have issued several series of common shares, each bearing the name of a different exchange traded fund (an "ETF"), which is a diversified portfolio of securities (the "Portfolio Securities") that tracks specific indexes. By way of example, the shares of defendant Russell 2000 Growth Index Fund, an ETF, are issued by iShares Trust, sold to the public, and publicly traded on national stock exchanges. The shares represent interests in the ETF's Portfolio Securities which, in this example, are a subset of the stocks that comprise the Russell 2000 Index.

The ETFs lend their Portfolio Securities to third parties pursuant to agreements that typically require the borrowers to post cash collateral as security for repayment of the loans, i.e., for the return of the borrowed Portfolio Securities. The ETF's lending agent ("Lending Agent"), defendant BlackRock Institutional Trust Company, N.A. ("BTC"), invests the collateral and

---

[1]    The ETF Defendants are iShares Russell Midcap Index Fund, iShares MSCI EAFE Index Fund, iShares MSCI Emerging Markets Index Fund, iShares Russell 2000 Growth Index Fund, iShares Russell 2000 Value Index Fund, iShares Core S&P Mid Cap Index Fund, iShares Core S&P Small-Cap Index Fund, and iShares Dow Jones US Real Estate Index Fund.

retains a portion of the net income earned on the investment as compensation for arranging and administering the loans (the "Loan Fee").

Plaintiffs are pension funds that allegedly own shares of one or more of the ETF Defendants. The gravamen of their Complaint is that the Loan Fee is excessive in violation of various provisions of the Investment Company Act of 1940 (the "ICA"), namely, Sections 36(a), 36(b) and 47(b) of that statute. These alleged statutory violations are set forth in three counts, each of which fails to state a claim for relief.

As an initial matter, case law construing and applying the ICA "imposes a large number of threshold determinations before litigation on the merits of a case may commence." *Olesh v. Dreyfus Corp.*, No. CV-94-1664, 1995 WL 500491, at *11 (E.D.N.Y. Aug. 5, 1995). Consequently, ICA claims "are particularly appropriate for dismissal" at the outset of an action where, as here, they "fail[] to meet the required 'threshold' determinations." *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 562 (D.N.J. 1999), *aff'd*, 305 F.3d 140 (3d Cir. 2002).

In this case, **Count I** of the Complaint has been brought pursuant to Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b), which authorizes shareholders of registered investment companies to sue the investment advisers or other affiliates of those companies (the "Advisers") to recover any allegedly excessive compensation paid to the Advisers. This private right of action is limited, however, by Section 36(b)(4) of the ICA, which provides that Section 36(b) shall not apply to any compensation paid in connection with transactions subject to Section 17 of the ICA, 15 U.S.C. § 80a-17, or any orders issued under Section 17 by the SEC. As alleged in the Complaint here, the Loan Fee at issue in this case was paid in connection with securities lending transactions that, by plaintiffs' own admission, are subject *both* to Section 17 *and* an order issued

by the SEC exempting defendants from compliance with Section 17. Accordingly, plaintiffs have no claim under Section 36(b) of the Complaint, and Count I should be dismissed.[2]

**Counts II** and **III** of the Complaint allege claims pursuant to Section 47(b) and Section 36(a) of the ICA, respectively. *See generally* 15 U.S.C. § 80a-46(b) (Section 47(b)); *id.* § 80a-35(a) (Section 36(a)). There is, however, no private right of action under either section, warranting dismissal of Counts II and III. Moreover, even if there were a private right of action, which there is not, Counts II and III should nevertheless be dismissed on the separate and independent ground that plaintiffs lack standing to assert the claims alleged in those counts. Although plaintiffs purport to bring these claims derivatively on behalf of the iShares Investment Companies and the ETFs (collectively, the "Funds" or the "iShares Funds"), plaintiffs have not satisfied the presuit demand requirements applicable to their derivative claims under governing state law and Rule 23.1 of the Federal Rules of Civil Procedure. Indeed, plaintiffs admit that they made no presuit demand on the boards of the iShares Investment Companies, and their Complaint is devoid of particularized allegations of fact sufficient to show that such demand would have been futile and therefore should be excused in this case. Consequently, plaintiffs lack standing to maintain the purely derivative claims alleged in Counts II and III.

---

[2]    In the alternative, at a minimum, Count I should be dismissed as against defendants Kapito and Latham (and all of the other individual defendants) because the Complaint nowhere alleges that any of these defendants received any portion of the Loan Fee, an omission that is fatal to plaintiffs' Section 36(b) claim against these individuals.

## ALLEGATIONS OF THE COMPLAINT[3]

Plaintiffs are pension funds that allegedly own shares in one or more of the ETF Defendants. (Compl. ¶¶ 6-7.) Plaintiffs nowhere allege that they lost any money or failed to earn any return on their investment. Rather, Plaintiffs complain that the Loan Fee, which is fully disclosed to investors, is excessive.

Defendant iShares Trust is organized as a statutory trust under the laws of Delaware. (*Id.* ¶ 11.) Defendant iShares, Inc. is organized as a corporation under the laws of Maryland. (*Id.* ¶ 10.) Both entities also are investment companies registered with the SEC under the ICA. Each of these investment companies issues multiple series of common stock for sale to the public. The shares of each series represent interests in a separate portfolio of investment securities, with each portfolio constituting a single exchange traded fund. (*Id.* ¶ 12.)

Defendant BlackRock Fund Advisors ("BFA") is registered with the SEC under the Investment Advisers Act of 1940. It acts as investment adviser to the iShares Investment Companies and the ETFs. It is a subsidiary of defendant BTC, a national banking association that provides, among other things, securities lending services to the ETFs. (*Id.* ¶ 14.)

BTC's compensation for its securities lending services is governed by a securities lending agreement among BTC, the iShares Investment Companies and the ETFs (the "Lending Agreement"). Under the terms of the Lending Agreement, BTC is entitled to the Loan Fee, which is calculated as 35% of the net amount earned from loaning Portfolio Securities to third parties on behalf of the ETFs. (*Id.* ¶ 70.) According to the Complaint, notwithstanding the 35% limitation on compensation to BTC specified in the Lending Agreement, BTC and BFA purportedly

---

[3]   The facts alleged in the Complaint are assumed to be true solely for purposes of this motion to dismiss. Defendants otherwise vigorously deny the material allegations of the Complaint, including the demonstrably erroneous assertion that the Loan Fee is "disproportionately large and far higher than would be negotiated with an unaffiliated agent in an arms length transaction." (Compl. ¶ 70.)

4

receive a Loan Fee equal to 40% of the net revenue generated by BTC's lending activities, and the ETFs receive the remaining 60% of that revenue. (*Id.* ¶¶ 67-69, 72, 90.)

Under Section 17(d) of the ICA, neither BTC nor any of its affiliates would be permitted to act as Lending Agent for the ETFs absent an order from the SEC exempting it from compliance with Section 17(d). (Compl. ¶¶ 176, 179.) On December 27, 2002, the SEC issued such an order to defendants' predecessors subject to, among other things, an ongoing requirement that a majority of the disinterested members of the Boards of the iShares Funds approve each securities lending arrangement between the ETFs and BTC. (*See* Compl. ¶ 180.) *Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,878, 2002 SEC LEXIS 3327 (Dec. 27, 2002) (order); *Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,840, 2002 SEC LEXIS 3095 (Dec. 2, 2002) (notice of application).

The Board of Directors of each iShares Fund named as a defendant in this action is comprised of the same nine individuals, all of whom are also named as defendants in this case (collectively, the "Director Defendants"). Seven of the Director Defendants are independent, disinterested directors unaffiliated with the iShares Funds. Two of the Director Defendants (defendants Kapito and Latham) are interested directors who are affiliated with the Funds and BFA and BTC. (Compl. ¶¶ 21-31.) Each Director Defendant also allegedly serves on the boards of 218 ETFs in the iShares family of ETFs. (*Id.* ¶ 102.) Certain unnamed directors also purportedly serve on boards of other investment companies and therefore allegedly have fiduciary duties to more than the 218 iShares ETFs advised by BFA. (*Id.* ¶ 103.) Plaintiffs also allege that the "time demands" on the directors, the number of funds they oversee, and the "substantial compensation" they receive from the ETFs render the Director Defendants "unable or unwilling" to fulfill their fiduciary duties to the eight ETF Defendants named in this case. (*Id.* ¶ 104.)

5

Plaintiffs further allege that "the interrelationship between" the Director Defendants and the other named defendants creates conflicts inconsistent with their fiduciary duties.  (*Id.* ¶ 105.)

## ARGUMENT

**I.**      **COUNT I FAILS TO STATE A CLAIM UNDER SECTION 36(b) OF THE ICA**

**A.**      **Plaintiffs Cannot State a Section 36(b) Claim Because the Challenged Securities Lending Transactions Are Subject to Section 17 of the ICA**

In Count I of the Complaint, plaintiffs allege that BTC and BFA received a Loan Fee that is excessive in breach of the fiduciary duties owed to the ETFs under Section 36(b) of the ICA. (Compl. ¶¶ 120-22.)  The fatal flaw with this claim is that it is precluded as a matter of law by Section 36(b)(4) of the statute, which provides that Section 36(b) has no application to compensation paid in connection with transactions, such as the securities lending transactions at issue here, that are subject to Section 17 of the ICA.

Section 36(b) provides in part as follows:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services . . . paid by such registered investment company . . . to such investment adviser or any affiliated person of such investment adviser.  An action may be brought under this subsection by . . . a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a-35(b).

The private right of action authorized under the foregoing statutory provision is subject to a number of provisos found in subsections (1) through (5) of Section 36(b).  As is relevant here, Section 36(b)(4) provides that shareholders of registered investment companies have no right of

action whatsoever under Section 36(b) with respect to compensation paid to investment advisers or their affiliates in connection with transactions subject to Section 17 of the ICA or orders issued by the SEC thereunder.  As set forth in subsection (b)(4), Section 36(b):

> shall *not* apply to compensation or payments made in connection with transactions subject to [Section 17] of this title, or rules, regulations, or orders thereunder.

15 U.S.C. § 80a-35(b)(4) (emphasis added).[4]

Count I of the Complaint in this case falls prey to Section 36(b)(4) because it repeatedly alleges that the ETFs paid purportedly excessive compensation to defendants BTC and BFA in connection with securities lending transactions subject to Section 17 of the ICA.  For example, plaintiffs not only assert that the loan transactions at issue violate Section 17(d) and Section 17(e) of the ICA (Compl. ¶¶ 185, 190, 196, 198), they also acknowledge that the SEC has issued an order exempting the ETFs, the iShares Investment Companies, BTC and BFA from compliance with Section 17(d).  (*Id.* ¶ 180.)  Consequently, under Section 36(b)(4) of the ICA, plaintiffs have no right of action against any of the defendants, and Count I of the Complaint should be dismissed.

**B.  Plaintiffs State No Section 36(b) Claim Against The Individual Defendants**

Even if plaintiffs could overcome the fatal impact of Section 36(b)(4), which they cannot, at a minimum, they still would have no Section 36(b) claim against the Director Defendants, namely, Messrs. Kapito and Latham and the other individual defendants, given that the Complaint nowhere alleges that any of them received any portion of the Loan Fee.  Indeed, Section 36(b)(3) expressly provides that "[n]o such action shall be brought or maintained against

---

[4]  Section 17(d) prohibits investment companies and their affiliates from participating jointly in transactions "in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe for the purpose of limiting or preventing participation by such registered . . . company on a basis different from or less advantageous than that of such other participant."  15 U.S.C. § 80a-17(d).

7

any person *other than the recipient* of such compensation or payments, and no damages or other relief shall be granted against any person *other than the recipient* of such compensation or payments." 15 U.S.C. § 80a-35(b)(3) (emphasis added).

Here, the Section 36(b) claim in Count I of the Complaint has been asserted against defendants BTC, BFA and the Director Defendants. (Compl. ¶¶ 110, 111.) Although plaintiffs allege that BTC and BFA received "fees for securities lending services" they provided on behalf of the ETFs (*id.* ¶ 110), the Complaint makes no such allegation as against the Director Defendants. Rather, it alleges that the directors breached "their fiduciary duties to the investors with regard to compensation for and payment *to BFA and BTC* for *their* services." (*Id.* ¶ 111 (emphasis added).) Plaintiffs' failure to allege that the Director Defendants were "the recipients of the . . . fees in question . . . is fatal to the plaintiffs' § 36(b) claims" under Section 36(b)(3). *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117-18 (2d Cir. 2007); *accord Steinberg v. Janus Capital Mgmt., LLC*, 457 F. App'x 261, 267 (4th Cir. 2011) ("[Section 36(b)(3)] is a prohibition against awarding remedies against anyone other than the recipient of the compensation."); *Zucker v. Federated S'holder Servs. Co.*, No. 2:06cv241, 2007 U.S. Dist. LEXIS 15186, at *6-7 (W.D. Pa. Mar. 5, 2007) (dismissing Section 36(b) claim where allegations failed to show that the defendants actually received the fees).

## II. COUNT II SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 47(b) OF THE ICA

Count II of the Complaint seeks rescission of the Lending Agreements pursuant to Section 47(b) of the ICA. Section 47(b) provides in pertinent part that "[a] contract that is made, or whose performance involves, a violation of [the ICA] . . . is unenforceable by either party." 15 U.S.C. § 80a-46(b)(1). According to plaintiffs, the Lending Agreements are unenforceable, and thus subject to rescission, because they purportedly violate Sections 17(d), 17(e), 36(a) and

8

36(b) of the ICA.  This claim should be dismissed because there is no private right of action under Section 47(b) of the statute.

In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the U.S. Supreme Court set forth the factors to be considered when determining whether a federal statute creates a private right of action.  In that case, the Court held that the most important factor is the "text and structure" of the statute.  *Id.* at 288.  In particular, it is "critical" to determine whether the statutory provision at issue contains express "'rights-creating' language."  *Id.*  Unless the statutory language expressly creates substantive rights on behalf of a particular class of persons in "clear and unambiguous terms," *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002), no private right of action exists, and "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 287-88.

The "modern trend" following *Sandoval* "has been for federal courts to deny the existence of implied private rights of action under the ICA." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1122 (9th Cir. 2010).  Consistent with this trend, most cases addressing the issue post-*Sandoval* have found no private right of action available under Section 47(b).  *See, e.g.*, *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.*, 677 F.3d 178, 187 (3d Cir.), *cert. denied*, 133 S. Ct. 529 (2012); *Steinberg,* 457 F. App'x at 267-68; *Wiener v. Eaton Vance Distrib., Inc.*, 2011 WL 1233131 at **11-13 (D. Mass.  2011).

In *Santomenno*, for example, the Third Circuit held that the text and structure of the ICA compel the conclusion that there is no private right of action under Section 47(b).  As noted by the court, "Congress empowered the [SEC] to enforce all ICA provisions [pursuant to] Section 42 [of the statute], *see* 15 U.S.C. § 80a-41, while creating an *exclusive* private right of action in Section 36(b)."  677 F.3d at 186 (emphasis added).  Because, under *Sandoval*, "'[t]he express

provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others,'" it followed that no private right of action should be read into the ICA beyond the unambiguous statutory provisions creating such a right exclusively under Section 36(b). *Id.* (alteration in original) (quoting *Sandoval*, 532 U.S. at 290).

To be sure, Section 47(b) creates a private remedy for violations of a substantive right conferred under the ICA. But Section 47(b) itself "does not also create substantive rights; rather, [it] 'merely provides a mechanism for enforcing individual rights 'secured' elsewhere," *i.e.*, the private right secured under Section 36(b) of the ICA. *See Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006) (private remedy available under 42 U.S.C. § 1983 does not create substantive rights); *see also Smith v. Oppenheimer Funds Distrib., Inc*., 824 F. Supp. 2d 511, 519-20 (S.D.N.Y. 2011) ("[Section 47(b)] provides a remedy rather than a distinct cause of action or basis of liability."); *Smith v. Franklin/Templeton Distribs., Inc.*, No. C 09-4775, 2010 U.S. Dist. LEXIS 56516, at *19-20 (N.D. Cal. June 8, 2010) ("By its terms, § 47(b) provides a remedy . . . rather than a distinct cause of action or basis for liability.").

As demonstrated above, plaintiffs have not stated a claim under Section 36(b). Consequently, plaintiffs have no substantive right under the ICA that they may enforce under Section 47(b) of the statute, which is purely remedial. In the same vein, as demonstrated below, plaintiffs have no private right of action under Section 36(a) or Section 17 of the ICA (*see* Point III and n.6, *infra*), and therefore have no available remedy under Section 47(b) to redress any purported violation of those provisions. Consequently, the Section 47(b) claim in Count II should be dismissed. *See Smith*, 824 F. Supp. 2d at 520 ("[W]hen courts dismiss claims that allege ICA violations as predicates to a section 47(b) claim, those courts also dismiss the section 47(b) claim."); *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, No. A-06-CA-540, 2006

10

U.S. Dist. LEXIS 84028, at *30-31 (W.D. Tex. Nov. 17, 2006) (report of magistrate judge) (collecting cases and finding that remedies provided by Section 47(b) are available only upon a showing of a violation of some other section of the ICA), *adopted*, No. A-06-CA-540, 2007 U.S. Dist. LEXIS 98853 (W.D. Tex. Jan. 23, 2007); *Hamilton v. Allen,* 396 F. Supp. 2d 545, 558-59 (E.D. Pa. 2005) ("A plaintiff asserting a claim under the [ICA] may seek relief under Section 47 only after a violation of some other section of the Act has been established.").[5]

## III.  COUNT III SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER SECTION 36(a)

Count III of the Complaint asserts a claim pursuant to Section 36(a) of the ICA, alleging that "BTC, BFA, and Defendant Directors breached their fiduciary duties by using investor assets for the benefit of their hedge funds and short-selling operations, without compensating investors in line with compensation that would have been paid based on arm's length trans-actions."  (Compl. ¶ 220.)  As numerous courts have held, there is no private right of action under Section 36(a) and Count III therefore should be dismissed.

Section 36(a) provides that the SEC "is authorized to bring an action" alleging that an officer, director, board member or investment adviser engaged "in any act or practice consti-tuting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts."  15 U.S.C. § 80a-35(a).  Because

---

[5]  In *In re Regions Morgan Keegan Securities, Derivative & ERISA Litigation*, 743 F. Supp. 2d 744 (W.D. Tenn. 2010), the court stated in dicta that "[c]ourts have determined that § 47(b) of the ICA contemplates a private right of action."  *Id.* at 762.  Even if this were not dicta, it still would not be authoritative or persuasive given that it is based principally on outdated or inapposite authorities, *i.e.*, (i) cases decided before *Sandoval* and *Johnson*, controlling subsequent authority compelling the conclusion that there is no private right of action under Section 47(b), and (ii) dicta in a case which assumed without deciding the existence of a private right of action under Section 47(b).  *See In re Regions*, 743 F. Supp. 2d at 762 (citing *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 880-81 (D. Md. 2005)).  The only other Section 47(b) case cited by the *Regions* court is *Hamilton*, 396 F. Supp. 2d at 558-60, a case that supports *defendants'* position that Section 47(b) is purely remedial and may be used only to enforce an available, substantive right under the ICA.  *See Hamilton*, 396 F. Supp. 2d at 558-59.

11

the ICA nowhere "explicitly provides a private right of action for violations of [Section 36(a)],"

there is a "presumption that Congress did not intend one." *Bellikoff*, 483 F.3d at 117. This

presumption "is buttressed by three additional features of the ICA." *Id*. First, Section 42

expressly authorizes the SEC to enforce all of the provisions of the ICA, which "'suggests that

Congress intended to preclude other[]'" methods of enforcing Section 36(a). *Id*. (citation omit-

ted). Second, "'Congress's explicit provision of a private right of action to enforce one section of

[the] statute,'" namely, Section 36(b), "'suggests that omission of any explicit private right of

action to enforce other sections [including Section 36(a)] was intentional.'" *Id*. (citation omit-

ted). Finally, the language of Section 36(a) "'focus[es] on the person *regulated* rather than the

individuals *protected*'"; it therefore "create[s] no implication of an intent to confer rights on a

particular class of persons.'" *Id.* (emphasis added) (quoting *Sandoval*, 532 U.S. at 289); a*ccord

Weiner*, 2011 WL 1233131 at **11-13; *Smith*, 824 F. Supp. 2d at 521; *Alexander v. Allianz

Dresdner Asset Mgmt. of Amer. Holding, Inc., et al.*, 509 F. Supp. 2d 190, 194 (D. Conn. 2007);

*Boyce v. AIM Mgmt. Group, Inc., et al.*, No. H-04-2587, 2006 WL 4671324, at *2 (S.D. Tex.

Sept. 29, 2006); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 239-40

(S.D.N.Y. 2006); *Hamilton*, 396 F. Supp. 2d at 555. Count III therefore should be dismissed.[6]

## IV.     PLAINTIFFS LACK STANDING TO ASSERT THE DERIVATIVE
##          CLAIMS ALLEGED IN COUNTS II AND III OF THE COMPLAINT

Even if plaintiffs had a private right of action under Section 47(b) or 36(a) of the ICA,

Counts II and III of the Complaint nevertheless should be dismissed because plaintiffs have

failed to satisfy the presuit demand requirements applicable to the admittedly derivative claims

alleged in those counts. Under Rule 23.1 of the Federal Rules of Civil Procedure, a complaint

---

[6]     The same reasoning compels the conclusion that there is no private right of action under Section
        17(d) and Section 17(e) of the ICA. *See DH2, Inc. v. Athanassiades*, 359 F. Supp. 2d 708, 714-15
        (N.D. Ill. 2005) (holding there is no private right of action under ICA Section 17(j)).

12

containing one or more derivative claims must allege with particularity the steps taken by plaintiffs, if any, to comply with the demand requirements that must be satisfied as a prerequisite to a derivative suit.  That rule provides in pertinent part as follows:  "The complaint [in a derivative action] must . . . state with particularity:  (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . ; and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).

The substantive contours of the demand requirement are governed by state law given that it "implements 'the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors.'"  *Kamen v. Kemper Fin. Servs., Inc*., 500 U.S. 90, 101 (1991) (citation omitted).  The particular state law to be applied is the law of the state where the corporation has been organized.  *Id.* at 108-09; *see also Lukas v. McPeak*, No. 3:11-CV-422, 2012 WL 4359437, at *5-6 (E.D. Tenn. Sept. 21, 2012) (in deciding whether futility exception was met, the court applied the law of the state of incorporation).  The relevant state laws here are those of Delaware and Maryland, the states of incorporation of the iShares Investment Companies that issued the ETF shares purchased by plaintiffs.[7]  As demonstrated below, plaintiffs have failed to establish demand futility under the law of either state, warranting dismissal of Counts II and III of the Complaint.[8]

---

[7]    The ETFs are not separate juridical entities.  The shares of each ETF are a separate series of shares issued by iShares Trust or iShares Inc., with each series representing an interest in the Portfolio Securities of each ETF.

[8]    In contrast to the derivative claims alleged in Counts II and III of the Complaint, the derivative claim under Section 36(b) alleged in Count I is not subject to any presuit demand requirement because that section expressly authorizes securities holders of investment companies to bring derivative actions without first making a demand on the companies' boards of directors.  *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 542 (1984).

13

**A.  Plaintiffs Have Failed To Show that Demand Is Futile Under Delaware Law**

Where, as here, a shareholder of a Delaware statutory trust brings a derivative action, the standards for evaluating demand futility are the same as those applied in derivative actions brought on behalf of Delaware corporations.  *See, e.g.*, *Hartsel v. Vanguard Grp., Inc.*, No. 5394, 2011 WL 2421003, at *1 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del.), *cert. denied*, 133 S. Ct. 32 (2012).  As explained by the court in *Hartsel*, regardless of whether a plaintiff sues on behalf of a corporation or a statutory trust, "Delaware courts typically apply one of two tests for determining whether a complaint should be dismissed for failure to adequately plead demand futility[:] . . . the *Aronson* test . . . [and t]he *Rales* test."  2011 WL 2421003, at *20 (citing, *inter alia*, *Aronson v. Lewis*, 473 A.2d 805, 130 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993)").

Here, *Aronson* provides the applicable test because plaintiffs' claims challenge "board action with respect to a specific transaction or conscious business decision."  *Hartsel*, 2011 WL 2421003, at *20.  Under *Aronson*, demand is excused "only if the complaint contains particu-larized factual allegations that raise a reasonable doubt that either:  (1) the board of directors are disinterested and independent; or (2) a challenged transaction or conduct was otherwise the product of a valid business judgment."  *Hartsel*, 2011 WL 2421003, at *20; *see also In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215, 2011 WL 4826104, at *6 (Del. Ch. Oct. 12, 2011).  The allegations of the Complaint fail to satisfy either prong of the *Aronson* test.

    1.  *The Complaint does not raise a reasonable doubt*
        *that the Directors are disinterested and independent*.

Pursuant to the Delaware Statutory Trust Act (the "DSTA"), which applies to Delaware statutory trusts such as iShares Trust, a trustee will be deemed independent and disinterested for

all purposes if she is not an "interested person" within the meaning of the ICA.[9]  Del. Code Ann. tit. 12, § 3801(d) (West Supp. 2013).  The ICA provides, in relevant part, that a trustee is "interested" if she is an "affiliated person" – *i.e.*, a person "controlled by" the investment adviser. 15 U.S.C. § 80a-2(a)(3), (19).  The ICA defines "control" as "the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company."  *Id.* § 80a-2(a)(9).  The statute further provides that, "[a] natural person shall be presumed *not* to be a controlled person within the meaning of this subchapter."  *Id.* (emphasis added).  A review of the Complaint here shows that plaintiffs have failed to allege facts sufficient to rebut the presumption that a majority of the Director Defendants, *i.e.*, all such defendants other than Messrs. Kapito and Latham (the "Unaffiliated Directors"), are disinterested.

The Complaint's allegations of director "interest" are limited to the following assertions: the Unaffiliated Directors (a) "oversee 218 funds comprising the iShares ETF group," (b) receive "substantial compensation from iShares funds . . . and related entities," and (c) have unspecified "conflicts of interest" stemming from the "interrelationship between iShares, the Defendant Directors, BFA and BTC."  These alleged "facts" are insufficient to establish demand futility.

---

[9]   The ICA sets forth specific bright-line rules for determining whether a director is "interested."  *See* 15 U.S.C. § 80a-2(a)(19); *see also id.* § 80a-2(a)(3).  For example, an individual is considered "interested" under the ICA if she is an officer or director of the investment company's investment adviser or if she owns shares of the adviser's stock.  *Id.* § 80a-2(a)(3).  An individual also is "interested" within the meaning of the ICA if she (i) has engaged in principal transactions with, or distributed shares for, the investment company or another company managed by the same investment adviser; (ii) has loaned money or property to the investment company; (iii) is on the advisory board of the fund's investment adviser; or (iv) in the previous two years, has been determined by the SEC to have had a material business or professional relationship with the investment company.  *Id.* § 80a-2(a)(19). None of these provisions is implicated with respect to the disinterested Director Defendants in this case.

15

(a)    <u>Service on multiple Boards does not excuse demand</u>.

Plaintiffs allege that the Unaffiliated Directors "are held out as 'independent,'" but should be deemed interested in light of their oversight of 218 iShares funds. (Compl. ¶ 103.) Membership on multiple boards, however, does not cast doubt on a trustee's fidelity to a specific trust or series of stock. In *Hartsel*, for example, the holders of shares issued by a family of Vanguard mutual funds organized as Delaware statutory trusts sued the funds' trustees derivatively on behalf of the funds without first making a presuit demand. The plaintiffs owned only some of the funds within the Vanguard family, but argued that the trustees' service on the boards of other funds in the same complex compromised their independence. The court squarely rejected this argument, reasoning in language fully applicable here: "[S]ervice on multiple boards alone is insufficient to cast reasonable doubt on a trustee's ability to exercise his business judgment as to whether to accept a stockholder's demand to bring suit against a board or trustees or others." *Hartsel*, 2011 WL 2421003, at *22; *see also In re Xethanol Corp. Derivative Litig.*, No. 06 Civ. 15536, 2007 WL 2331975, at *6 (S.D.N.Y. Aug. 16, 2007) (applying Delaware law and finding demand not excused because members of board served on multiple boards together); *Halpert Enters., Inc. ex rel. J.P. Morgan Chase & Co. v. Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) (applying Delaware law) ("The allegations that several of the Board members sit together, in various configurations, on other boards do not call into question the ability of the board members to exercise proper business judgment." (citing *Langner v. Brown*, 913 F. Supp. 260, 265 (S.D.N.Y. 1996))); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 879 n.11 (D. Md. 2005) (finding that under Delaware law, service on multiple fund boards is insufficient to render trustees interested and not independent in derivative action).

16

(b)    <u>The receipt of director fees does not excuse demand</u>.

The Complaint also attempts to establish demand futility by alleging that the Unaffiliated Directors receive "substantial compensation" ($275,000 in 2012).  (Compl. ¶¶ 24-30, 103.)  This allegation is insufficient in light of the language of the DSTA, which provides that a trustee's receipt of compensation from multiple investment companies does not, by itself, affect a trustee's status as an independent trustee: "the receipt of compensation for service as an independent trustee of the statutory trust and also for service as an independent trustee of 1 or more other investment companies managed by a single investment adviser . . . shall not affect the status of a trustee as an independent trustee under this chapter."  Del. Code Ann. tit. 12, § 3801(d) (West Supp. 2013); *see also Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) (affirming dismissal for failure to make a demand because "[t]he only averment permitting such an inference [of financial interest] is the allegation that all GM's directors are paid for their services as directors.  However, such allegations, without more, do not establish any financial interest."), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

2.    *The Complaint raises no doubt about whether the Director Defendants exercised sound business judgment*.

In an attempt to satisfy the second prong of the *Aronson* test, plaintiffs appear to allege that demand would be futile because the Director Defendants "are either unable or unwilling to competently oversee the activities of iShares's service providers and thus fulfill their fiduciary duties."  (Compl. ¶ 104.)  In other words, plaintiffs appear to challenge the propriety of the directors' decisions to authorize the securities lending arrangements memorialized in the Lending Agreements with the ETFs.  In making this allegation, plaintiffs face "'a substantial burden, as the second prong of the *Aronson* test is "directed to extreme cases in which despite the appearance of independence and disinterest a decision is so extreme or curious as to itself raise a

17

legitimate ground to justify further inquiry and judicial review.'"" *Highland Legacy Ltd. v. Singer*, No. 1566-N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) (citations omitted).

To satisfy the heavy burden applicable under *Aronson's* second prong, plaintiffs must "plead facts amounting to corporate waste." *Protas v. Cavanagh*, No. 6555, 2012 Del. Ch. LEXIS 88, at *33 (Del. Ch. May 4, 2012). And to establish waste, plaintiffs must allege facts sufficient to show that

> the challenged transaction . . . reflect[s] "an exchange of corporate assets for consideration so disproportionately small" that it effectively could be characterized as a mere gift serving no corporate purpose. "Where, however, the corporation has received '*any substantial* consideration' and where the board has made 'a *good faith judgment* that in the circumstances the transaction was worthwhile,' a finding of waste is inappropriate, even if hindsight proves that the transaction may have been ill-advised." "This is obviously an extreme test, very rarely satisfied by a shareholder plaintiff."

*Zucker v. Andreesen*, No. 6014, 2012 Del. Ch. LEXIS 135, at *26-27 (Del. Ch. June 21, 2012) (citations omitted).

Here, the Complaint falls far short of the required showing. Indeed, by alleging that the ETFs received at least 60 percent of the net revenue generated by securities lending transactions undertaken for their benefit (Compl. ¶ 67), the Complaint concedes that the ETFs received substantial consideration in connection with those transactions. Moreover, the Complaint alleges no facts sufficient to establish that the Director Defendants acted in "bad faith" when approving loan transactions, *i.e.*, they had "'actual or constructive knowledge' that their conduct was legally improper." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008). Accordingly, the Complaint's allegations of demand futility fail under both prongs of the *Aronson* test.

### B. Plaintiffs Have Failed To Show that Demand Is Futile Under Maryland Law

To satisfy the "very limited" exception to the presuit demand requirement under Maryland law, plaintiffs must allege

18

in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Werbowsky v. Collomb*, 362 Md. 581, 620, 766 A.2d 123, 144 (2001).

Here, the Complaint does not even attempt to explain why a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the ETFs. Thus, plaintiffs have not established that demand is excused under this branch of the very limited exception to Maryland's demand requirement.

The Complaint also does not adequately allege that a majority of the Director Defendants are so personally conflicted that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. In Maryland, as in Delaware, a director of an investment company who is not deemed to be an "interested" director within the meaning of the ICA will "be deemed to be independent and disinterested *when making any determination or taking any action as a director*." Md. Code Ann., Corps. & Ass'ns § 2-405.3(b) (West 2002) (emphasis added). Thus, allegations that fail to establish "interest" under the ICA, *e.g.*, allegations of substantial compensation for service on multiple fund boards (the only allegations of director "interest" in the Complaint here), are insufficient to excuse demand. *See, e.g.*, *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 329-31 (4th Cir. 2001); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 142-44 (3d Cir. 2002) (per curiam); *Verkouteren v. BlackRock Fin. Mgmt., Inc.*, No. 98 Civ. 4673, 1999 U.S. Dist. LEXIS 10892, at *12 (S.D.N.Y. July 20, 1999), *aff'd mem.*, 208 F.3d 204 (2d Cir. 2000).

Given the absence of particularized allegations of demand futility in the Complaint, Count II and III should be dismissed pursuant to Rule 23.1 of the Federal Rules of Civil

Procedure and under Maryland and Delaware law. *See Lukas,* 2012 WL 4359437, at *4-7

(dismissing derivative claim lacking particularized allegations of demand futility based on Fed.

R. Civ. P. 23.1 and Tennessee state law); *Weinberg ex rel. BioMed Realty Trust Inc. v. Gold*, 838

F. Supp. 2d 355, 357-62 (D. Md. 2012) (dismissing complaint for failing to offer sufficient

allegations to establish demand futility under Maryland law); *In re eBay, Inc., Derivative Litig.*,

No. 10-470, 2011 WL 3880924, at *5-10 (D. Del. Sept. 2, 2011) (dismissing complaint for

failing to allege demand futility under Delaware law).

## CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss should be granted in all

respects.

Dated:  Nashville, Tennessee        Respectfully submitted,
       March 11, 2013

s/ Seth M. Schwartz w/permission      s/ John R. Jacobson_____
Seth M. Schwartz (admitted pro hac)      Steven A. Riley (BPR #6258) sriley@rwjplc.com
Jeremy A. Berman (admitted pro hac)      John R. Jacobson (BPR #14365) jjacobson@rwjplc.com
Skadden, Arps, Slate, Meagher & Flom LLP      Milton S. McGee, III (BPR #24150) tmcgee@rwjplc.com
Four Times Square      Riley Warnock & Jacobson, PLC
New York, NY 10036-6522      1906 West End Avenue
(212) 735-3000      Nashville, TN 37203
(212) 735-2000 Facsimile      (615) 320-3700
Seth.Schwartz@skadden.com      (615) 320-3737 Facsimile
Jeremy.Berman@skadden.com

     *Attorneys for Defendants*
     *iShares Trust; iShares, Inc., iShares Russell*
     *Midcap Index Fund; iShares MSCI EAFE*
     *Index Fund; iShares MSCI Emerging Markets*
     *Index Fund; iShares Russell 2000 Growth*
     *Index Fund; iShares Russell 2000 Value*
     *Index Fund; iShares Core S&P Mid Cap*
     *Index Fund; iShares Core S&P Small-Cap*
     *Index Fund; iShares Dow Jones US Real*
     *Estate Index Fund; Blackrock Fund*
     *Advisors; Blackrock Institutional Trust*
     *Company, N.A.; Robert S. Kapito; and*
     *Michael Latham*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served via the Court's ECF system on this 11th day of March, 2013, upon:

James Gerard Stranch, III
J. Gerard Stranch IV
Michael G. Stewart
Karla M. Campbell
Branstetter, Stranch & Jennings, PLLC
227 Second Avenue North
Nashville, TN 37201
jstranch@branstetterlaw.com
gstranch@branstetterlaw.com
mstewart@branstetterlaw.com
kcampbell@branstetterlaw.com

John M. Tipps
John C. Hayworth
Emily B. Warth
Walker, Tipps & Malone
2300 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2415
mtipps@walkertipps.com
jhayworth@walkertipps.com
ewarth@walkertipps.com

C. Mark Pickrell
William G. Brown
Andrew E. Hill
5701 Old Harding Pike
Suite 200
Nashville, TN 37205
mark.pickrell@pickrell-law.net
will.brown@pickrell-law.net
drew.hill@pickrell-law.net

Bruce H. Schneider
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038-4982
bschneider@stroock.com

Jeremy Berman
Seth M. Schwartz
Skadden, Arps, Slate,
    Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522
jeremy.berman@skadden.com
seth.schwartz@skadden.com

s/John R. Jacobson