IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LABORERS' LOCAL 265 PENSION FUND ) <br> and PLUMBERS AND PIPEFITTERS ) <br> LOCAL NO. 572 PENSION FUND, ) <br> ) <br> Plaintiffs, ) <br> ) <br> ) <br> v. ) <br> ) <br> iSHARES TRUST; iSHARES, INC., ) <br> iSHARES RUSSELL MIDCAP INDEX ) <br> FUND; iSHARES MSCI EAFE INDEX ) <br> FUND; iSHARES MSCI EMERGING ) <br> MARKETS INDEX FUND; iSHARES ) <br> RUSSELL 2000 GROWTH INDEX FUND; ) <br> iSHARES RUSSELL 2000 VALUE INDEX ) <br> FUND; iSHARES CORE S&P MID CAP ) <br> INDEX FUND; iSHARES CORE S&P ) <br> SMALL-CAP INDEX FUND; iSHARES ) <br> DOW JONES US REAL ESTATE INDEX ) <br> FUND; BLACKROCK FUND ADVISORS; ) <br> BLACKROCK INSTITUTIONAL TRUST ) <br> COMPANY, N.A.; ROBERT S. KAPITO; ) <br> MICHAEL LATHAM; ROBERT H. ) <br> SILVER; GEORGE G.C. PARKER; JOHN ) <br> E. MARTINEZ; CECILIA H. HERBERT; ) <br> CHARLES A. HURTY; JOHN E. ) <br> KERRIGAN; and MADHAV V. RAJAN, ) <br> ) <br> Defendants. ) | Civil No. 3:13-00046 <br> Judge Trauger <br> Magistrate Judge Knowles |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Exhibit 1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .........................................................................................................................1

I. COUNT I FAILS TO STATE A CLAIM UNDER SECTION 36(b) .................................1

    A. The Transactions at Issue Are Subject to Section 17................................................1

    B. The Transactions at Issue Are Subject to the SEC's Order Under Section 17 ........................................................................................................................5

II. COUNT II SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 47(b) ...................................................6

III. COUNT III SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER SECTION 36(a) ...............................8

IV. PLAINTIFFS LACK STANDING TO ASSERT THE DERIVATIVE CLAIMS ALLEGED IN COUNTS II AND III OF THE COMPLAINT ...........................9

CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

Cases                                                                                                    Page

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ................................................................................4, 6, 8

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ......................................................................................9

*Davis v. Bailey*,
  No. 05-cv-00042, 2005 U.S. Dist. LEXIS 38204 (D. Colo. Dec. 22, 2005) ...........8

*Dull v. Arch*,
  No. 05 C 140, 2005 U.S. Dist. LEXIS 14988 (N.D. Ill. July 27, 2005) .................9

*Exxon Mobil Corp. v. Allapattah Services Inc.*,
  545 U.S. 546 (2005) ...............................................................................................8

*In re Goldman Sachs Group, Inc. Shareholder Litigation*,
  No. 5215-VCG, 2011 Del. Ch. LEXIS 151 (Del. Ch. Oct. 12, 2011), *aff'd mem.
  sub nom. S.E. Pa. Trans. Auth. v. Blankfein*, 44 A.3d 922 (Del. 2012) ..................10

*Gonzaga University v. Doe*,
  536 U.S. 273 (2002) ...............................................................................................7

*Holman v. Indiana*, 211 F.3d 399 (7th Cir. 2000)……………………………………...5

*I.W. Berman Properties v. Porter Bros., Inc.*,
  276 Md. 1, 344 A.2d 65 (1975) ............................................................................10

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011) ...........................................................................................8

*Johnson v. City of Detroit*,
  446 F.3d 614 (6th Cir. 2006) .................................................................................7

*Lessler v. Little*,
  857 F.2d 866 (1st Cir. 1988) ..................................................................................4

*New York City Employees' Retirement System v. SEC*,
  45 F.3d 7 (2d Cir. 1995) .........................................................................................1

*Olmsted v. Pruco Life Insurance Co. of New Jersey*,
  283 F.3d 429 (2d Cir. 2002) ...............................................................................7, 8

*Rohrbaugh v. Investment Co. Institute*,
    No. 00-1237, 2002 U.S. Dist. LEXIS 13401 (D.D.C. July 2, 2002) .......................4

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Insurance Co. (U.S.A.)*,
    677 F.3d 178 (3d Cir.), *cert. denied*, 133 S. Ct. 529 (2012) ....................................6

*Sekuk Global Enterprises Profit Sharing Plan v. Kevenides*,
    No. 24-C-03-007496, 2004 Md. Cir. Ct. LEXIS 20 (Md. Cir. Ct. May
    25, 2004) ...................................................................................................................10

*Smith v. Franklin/Templeton Distributors, Inc.*,
    No. C 09-4775 PJH, 2010 U.S. Dist. LEXIS 112934 (N.D. Cal. Oct. 22,
    2010) ...........................................................................................................................6

*Smith v. Oppenheimer Funds Distributor, Inc.*,
    824 F. Supp. 2d 511 (S.D.N.Y. 2011)....................................................................6, 7

*Stegall v. Ladner*,
    394 F. Supp. 2d 358 (D. Mass. 2005) ......................................................................8

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979).....................................................................................................6

## STATUES AND REGULATIONS

15 U.S.C. § 80a-17............................................................................................... *passim*

15 U.S.C. § 80a-17(d) ............................................................................................ 2-3, 5

15 U.S.C. § 80a-17(e) ...................................................................................................3

15 U.S.C. § 80a-35(a) ...................................................................................................8

15 U.S.C. § 80a-35(b) ......................................................................................... *passim*

15 U.S.C. § 80a-35(b)(4) ..............................................................................................5

15 U.S.C. § 80a-47(b) ............................................................................................... 6-8

15. U.S.C § 80b-15 .......................................................................................................6

17 C.F.R. § 270.17d-1(c) (2012)...................................................................................3

**OTHER AUTHORITIES**

*Maxim Series Fund, Inc.*,
   Investment Company Act Release No. 25,878, 2002 SEC LEXIS 3327 (Dec. 27,
   2002) ..........................................................................................................................5

*Norwest Bank Minnesota, N.A.*,
    SEC No-Action Letter, 1995 SEC No-Act. LEXIS 529 (May 25, 1995)…...1, 2, 3

Defendants iShares Trust, iShares, Inc., the ETF Defendants,[1] BlackRock Fund Advisors, BlackRock Institutional Trust Company, N.A. ("BTC"), Robert S. Kapito and Michael Latham respectfully submit this reply memorandum of law in further support of their motion to dismiss the Verified Complaint ("Complaint" or "Compl.").

## ARGUMENT

### I. COUNT I FAILS TO STATE A CLAIM UNDER SECTION 36(b)[2]

#### A. The Transactions at Issue Are Subject to Section 17

According to plaintiffs, the SEC purportedly has opined that securities lending arrangements are not subject to Section 17 of the ICA. (Opp. Br. at 7-8.) They contend this shows that Section 36(b)(4) of the ICA does not bar their Section 36(b) claim. This erroneous argument is based almost entirely on plaintiffs' misreading of an SEC no-action letter, *Norwest Bank Minnesota, N.A.*, SEC No-Action Letter, 1995 SEC No-Act. LEXIS 529 (May 25, 1995) ("*Norwest*"), a document that actually undermines plaintiffs' position.

As a threshold matter, the *Norwest* no-action letter is not precedential. It was issued by the *staff* of the SEC, *not* the Commission itself. Moreover, "rules announced in no-action letters . . . have no binding authority." *N.Y.C. Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 14 (2d Cir. 1995). *Norwest* therefore is entitled to *no* deference, much less the "highest degree of judicial deference" mentioned by plaintiffs in their opposition brief. (*See* Opp. Br. at 10.)

---

[1] Unless otherwise noted, the definitions contained in Defendants' Memorandum of Law in Support of Motion To Dismiss the Complaint ("Defendants' Opening Brief"), dated March 11, 2013, Docket No. 22, apply herein.

[2] Plaintiffs have conceded that they state no claim under Section 36(b) against the individual defendants (Opp. Br. at 13 n.12), which is the only claim asserted against those defendants. Accordingly, plaintiffs do not contest that the Complaint should be dismissed as to the interested and non-interested directors.

Furthermore, *Norwest* is readily distinguishable. The staff in *Norwest* did not address the lending arrangements at issue in this case, much less opined that they are not subject to Section 17 of the ICA. Rather, the staff stated it would recommend no enforcement action with respect to a different arrangement, namely, a custody agreement authorizing the affiliate of an investment adviser (a "Custodian") to perform solely ministerial tasks in connection with securities loans in exchange for a fee *not* based on the revenue generated by the loans. This fee arrangement was critical to the staff's conclusion that the proposed custody arrangement fell outside the scope of Section 17:

> In our view, a service arrangement between a fund and an affiliated person of the fund under which compensation is not based on a share of the revenue generated by the service provider's efforts is not a "joint enterprise or other joint arrangement or profit-sharing plan" [triggering application of Section 17(d) and Rule 17d-1 promulgated thereunder]. Here, the Custodian's compensation would not be based on a share of the revenue generated by the proposed securities lending Program. We therefore conclude that the Program is outside the scope of rule 17d-1.

*Norwest*, 1995 SEC No-Act. LEXIS 529, at *12 (footnote omitted).

In marked contrast to the Custodian in *Norwest*, BTC acts as a full-service securities lending agent that shares with the Funds a portion of the net revenue generated by the securities loans. Thus, even under the staff's reading of Section 17(d) in *Norwest*, BTC's Loan Fee is subject to Rule 17d-1, and the no-action relief granted in that matter would not have been available to defendants here.

Plaintiffs fare no better with their attempt to suggest that defendants previously endorsed plaintiffs' reading of *Norwest*. (Opp. Br. at 8.) In making that argument, plaintiffs point to a sentence in the application defendants submitted to the SEC for exemptive relief under Section 17, which stated that "the duties to be performed by [BTC] as lending agent with respect to any Fund will not exceed the parameters set forth in . . . [*Norwest*]." (*Id.*) Contrary to plaintiffs'

2

contention, however, the foregoing sentence is not a concession that Section 17 has no application to securities lending arrangements. The *Norwest* parameters referenced by defendants in their exemptive application were those relating to the staff's grant of no-action relief under Section 17(e) of the ICA. In *Norwest*, the staff noted it was granting the relief under Section 17(e) in light of the lending agent's representation it would take direction from and be supervised by the Funds' boards of directors and investment adviser. *See Norwest*, 1995 SEC No-Act. LEXIS 529, at *9 ("Because a Custodian would select borrowers, execute loan agreements, and invest cash collateral only in accordance with *guidelines specified by the Fund's adviser and under the adviser's supervision*, we believe that these activities would present little opportunity for the types of conflicts that [S]ection 17(e)(1) was designed to prevent.") (emphasis added).

In light of this guidance from the staff in *Norwest*, defendants' exemptive application to the SEC stated that BTC's securities lending activities would remain under the direction and supervision of the Funds' directors and investment adviser, thereby avoiding any issue under Section 17(e). For purposes of this motion, however, the Section 17(e) parameters are irrelevant because defendants' application sought exemptive relief from the SEC under a different provision of the ICA, namely, Section 17(d), which prohibits an investment company and its affiliates from entering into any contract or arrangement "concerning an enterprise or undertaking whereby [they] have a joint or a joint and several participation, or share in the profits of such enterprise or undertaking." 17 C.F.R. § 270.17d-1(c) (2012). Thus, contrary to plaintiffs' suggestion, nothing in defendants' exemptive application concedes that Section 17(d) of the ICA has no application to securities lending arrangements.

There also is no merit to plaintiffs' contention that defendants' construction of Section 36(b)(4) of the ICA, is unsupported by any legal authority. (*See* Opp. Br. at 6.) In reality, even plaintiffs' authorities show that defendants are correct and plaintiffs' reading of the statute is meritless as a matter of law. For example, in *Lessler v. Little*, 857 F.2d 866 (1st Cir. 1988) (Opp. Br. at 14 n.13), the First Circuit Court of Appeals recognized that "Section 36(b)(4) makes it clear that rights and remedies under section 17 and section 36(b) are intended to be mutually exclusive. . . . Since we have held that [the] complaint does state a claim under section 17(a)(2), it therefore follows that [the] complaint does not also state a claim under section 36(b)." *Lessler*, 857 F.2d at 874. *See also Rohrbaugh v. Inv. Co. Inst.*, No. 00-1237, 2002 U.S. Dist. LEXIS 13401, at *9 n.8 (D.D.C. July 2, 2002) (noting that plaintiffs pled their Section 36(b) and Section 17 claims in the alternative because Section 36(b) "prohibits claims for any conduct covered by section 17").[3]

Plaintiffs' arguments also are undermined by the allegations of their own Complaint, which include binding judicial admissions asserting unequivocally and without qualification that the Funds' securities lending arrangements are subject to Section 17 and would be flatly prohibited under that section absent an exemption from the SEC. (Compl. ¶¶ 176-177, 180, 187, 190, 193, 196, 198.) Contrary to plaintiffs' contention, these admissions are not examples of pleading "in the alternative." Indeed, the Complaint is devoid of any allegation that the Funds' securities lending arrangements comport with Section 17 but nevertheless violate Section 36(b). Rather, plaintiffs have pled "in tandem": they assert "without equivocation" that defendants

---

[3] *Lessler* and *Rohrbaugh* pre-date more recent authorities holding under *Alexander v. Sandoval*, 532 U.S. 275 (2001), that there is no private right of action under any provision of the ICA other than Section 36(b). (*See* Defs.' Opening Br. at 9-12.) Nevertheless, both decisions construe Section 36(b)(4) as precluding any claim under Section 36(b) based on any transaction subject to Section 17. Ironically, plaintiffs cite no authority to the contrary.

violated both Section 17 and Section 36(b).  *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) ("generally an alternative claim is drafted in the form of 'either-or'").  Thus, plaintiffs' own Complaint forecloses the arguments in their brief that defendants' securities lending arrangements are not subject to Section 17.

### B. The Transactions at Issue Are Subject to the SEC's Order Under Section 17

Even if *Norwest* supported plaintiffs' position that defendants' securities lending arrangements are outside the scope of Section 17(d), which it does not, their Section 36(b) claim still would be legally defective because there is and can be no dispute that the Funds' securities lending arrangements are subject to the exemptive order issued by the SEC pursuant to Section 17.  Indeed, the order, which is referenced in plaintiffs' Complaint (Compl. ¶ 180), expressly recites that it has been issued pursuant to Section 17(d) of the ICA:

> IT IS FURTHER ORDERED, under section 17(d) of the Act and rule 17d-1 under the Act, that the proposed transactions are approved, effective immediately, subject to the conditions contained in the application, as amended.[4]

Under Section 36(b)(4) of the ICA, the foregoing order, by itself, bars plaintiffs' claim under Section 36(b).  Section 36(b)(4) provides that Section 36(b) "*shall not apply* to compensation or payments made in connection with transactions subject to [Section 17] of [the ICA], or rules, regulations, *or orders* thereunder." 15 U.S.C. § 80a-35(b)(4) (emphasis added).  Thus, under Section 36(b)(4), any limits on compensation otherwise imposed by Section 36(b) have no application to compensation paid in connection with any transaction subject to an order issued by the SEC under Section 17 of the ICA.  Consequently, where, as here, such an order has been issued, Section 36(b) has no application whatsoever − even if, as plaintiffs contend in their

---

[4] *Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,878, 2002 SEC LEXIS 3327, at *3 (Dec. 27, 2002) (order under ICA §§ 6(c), 17(b)).  Defendants' Opening Brief (at 5) cited and discussed the SEC's order.  A copy of the order is attached as Item U in Defendants' Appendix of authorities.

5

brief, the securities lending transactions at issue are permissible under Section 17. (Opp. Br. at 10, 12.)

## II.  COUNT II SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 47(b)

Plaintiffs contend there is a private right of action under Section 47(b) of the ICA, relying heavily, if not exclusively, on a decision over thirty years old, *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) *("TAMA")*. This erroneous contention fails to withstand analysis.

In relying on *TAMA*, plaintiffs attempt to equate Section 47(b) of the ICA with a provision of a different statute, Section 215 of the Investment Advisers Act of 1940 (the "IAA"), 15 U.S.C. § 80b-15, as to which the Supreme Court in *TAMA* implied a private right of action. The same contention has been rejected, however, by every court squarely addressing the issue after the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001). Indeed, each of those courts has distinguished *TAMA* and held that there is no private right of action under Section 47(b). *See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 185-87 (3d Cir.), *cert. denied*, 133 S. Ct. 529 (2012); *Smith v. Oppenheimer Funds Distrib., Inc.*, 824 F. Supp. 2d 511, 517-18 (S.D.N.Y. 2011); *Smith v. Franklin/Templeton Distribs., Inc.*, No. C 09-4775 PJH, 2010 U.S. Dist. LEXIS 112934, at *3-4 & n.1 (N.D. Cal. Oct. 22, 2010). As explained by one of those courts:

> [A]fter *Sandoval*, the mere assertion of similarity between different statutes is no substitute for a careful analysis of the proposed private right of action against the text and structure of the entire statute at issue. Such analysis reveals that *TAMA*'s interpretation of the IAA is distinguishable from the ICA. The IAA's substantive provisions do not contain a private right of action, but the ICA contains an express right of action, *section 36(b)*, for payment of excessive fees. "Congress intended the express private right of action set forth in Section 36(b) to be exclusive; there was no similar exclusive, express right of action in *TAMA*." *TAMA*'s creation of an implied private right of action in the IAA's contract voiding provision did not override any allocation of private rights by Congress.

6

> Finding an implied right of action in ICA section 47(b), on the other hand, "would undermine the carefully considered limits which Congress placed on this action in Section 36(b)(3)" – the only express right of action in the substantive provisions of the ICA.

*Oppenheimer Funds*, 824 F. Supp. 2d at 520 (footnote and citations omitted).

In contrast to Section 36(b), Section 47(b) contains no language creating any substantive rights for private plaintiffs. (*Cf.* Opp. Br. at 17.) While plaintiffs' brief purports to quote such language (*see id.*), Section 47(b) creates only a remedy, which is insufficient to create a private right of action under controlling authority, including the Sixth Circuit's decision in *Johnson v. City of Detroit*, 446 F.3d 614, 621 (6th Cir. 2006), a case nowhere mentioned, much less distinguished, in plaintiffs' opposition brief. Under the analysis employed by the Sixth Circuit in *Johnson*, Section 47(b) creates a remedy of rescission for violations of other provisions of the ICA. Consequently, Section 47(b) "does not . . . create substantive rights; [it] 'merely provides a mechanism for enforcing individual rights 'secured' elsewhere,'" *i.e.*, rights arising under other provisions of the ICA, albeit solely to the extent plaintiffs have a private cause of action to assert those rights. *Johnson*, 446 F.3d at 618 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)). Because plaintiffs have no claim under Section 36(b) of the ICA and no right of action under any other provision of the statute, plaintiffs cannot state any claim under Section 47(b).

To be sure, as plaintiffs observe, in *Olmsted v. Pruco Life Insurance Co. of New Jersey*, 283 F.3d 429 (2d Cir. 2002), the SEC submitted an amicus brief taking the position that there is a private right of action under Section 47(b). (Opp. Br. at 16.) The views expressed by the SEC in *Olmsted*, however, carry little, if any, weight. Indeed, the Supreme Court repeatedly has "expressed skepticism over the degree to which the SEC should receive deference regarding the private right of action," finding that "the SEC's presumed expertise 'is of limited value' when analyzing 'whether a cause of action should be implied by judicial interpretation in favor of a

7

particular class of litigants.'" *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2303 n.8 (2011). This skepticism is particularly warranted here given that the SEC's brief does not even mention *Sandoval*, much less makes a persuasive argument that the applicable *Sandoval* factors compel the conclusion Congress intended to create a private right of action under Section 47(b). In all events, the Second Circuit did not adopt the SEC's position in *Olmsted* and did not recognize any private right of action in that case. *See Olmsted*, 283 F.3d at 436 & n.5.

### III. COUNT III SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER SECTION 36(a)

Acknowledging that the trend post-*Sandoval* has been to deny a private right of action under Section 36(a) of the ICA, plaintiffs nevertheless contend that this trend purportedly is contrary to the statute's legislative history, which supposedly reflects congressional intent to recognize a private right of action under that section. (Opp. Br. at 20). The legislative history is irrelevant, however, because as the Supreme Court has "repeatedly held, the authoritative statement is the statutory text, not the legislative history, or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 568 (2005). Such "materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Id.* With respect to Section 36(a) of the ICA, as several courts have held, the text of the ICA unambiguously creates a private right of action solely under Section 36(b), a clear expression of congressional intent that renders resort to legislative history and any other extrinsic material both unnecessary and inappropriate as a matter of law. *See Davis v. Bailey*, No. 05-cv-00042, 2005 U.S. Dist. LEXIS 38204, at *11-15 (D. Colo. Dec. 22, 2005) (rejecting private right of action under Section 36(a) based on *Exxon Mobil* and *Sandoval*); *accord Stegall v. Ladner*, 394 F. Supp. 2d 358, 371-72 & nn.13, 15 (D.

8

Mass. 2005); *Dull v. Arch,* No. 05 C 140, 2005 U.S. Dist. LEXIS 14988, at *8 (N.D. Ill. July 27, 2005).

## IV. PLAINTIFFS LACK STANDING TO ASSERT THE DERIVATIVE CLAIMS ALLEGED IN COUNTS II AND III OF THE COMPLAINT

As plaintiffs acknowledge, demand is excused under Delaware law only if the complaint contains particularized allegations of fact sufficient to raise a reasonable doubt that either: (1) "the directors are disinterested and independent"; or (2) the challenged transaction or conduct "was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del. 2000). Plaintiffs do not challenge the disinterestedness and independence of the Board members, effectively conceding they have not satisfied the first prong of *Aronson*. Plaintiffs nevertheless claim that "the Complaint meets the second prong." (Opp. Br. at 21.) They are wrong as a matter of law.

As noted in Defendants' Opening Brief, *Aronson*'s second prong requires a showing of corporate waste, *i.e.,* particularized facts sufficient to show the Funds received no substantial consideration for lending securities to third parties. (Defs.' Opening Br. at 18.) Here, plaintiffs nowhere allege that the Funds' share of the revenue generated by the securities loans is insubstantial. (*Cf.* Opp. Br. at 23-24.) Rather, they contend only that the Funds should receive a larger portion of that revenue because other securities lenders purportedly receive a larger share from the agents they use to administer securities loans. (*Id.*) This is at best an "apples to oranges" comparison given that, apart from conclusory allegations that BTC's services are inferior (*e.g.*, Compl. ¶ 123), the Complaint does not describe the securities lending services provided by BTC, let alone alleges particularized facts showing that those services did not warrant the "additional" compensation BTC purportedly received. Absent such allegations, the

9

Complaint's assertion that BTC receives higher compensation than other lending agents falls far short of showing waste, much less creates a reasonable doubt that the Loan Fee is not the product of valid business judgment on the part of the disinterested Boards of the iShares Investment Companies. *Cf. In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215-VCG, 2011 Del. Ch. LEXIS 151, at *52-53 (Del. Ch. Oct. 12, 2011), *aff'd mem. sub nom. S.E. Pa. Trans. Auth. v. Blankfein*, 44 A.3d 922 (Del. 2012).

There also is no merit to plaintiffs' contention that demand should be excused under Maryland law because waiting for a response to a demand would irreparably harm the Funds. (Opp. Br. at 24-25.) When demand is made, any harm caused by any undue "delay" would not be irreparable given that it is fully compensable by an award of prejudgment interest, which "compensate[s] the aggrieved party for the loss of use of the principal liquidated sum found due it." *I.W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 24, 344 A.2d 65, 79 (1975). Having failed to show the absence of an adequate legal remedy, plaintiffs have not alleged facts sufficient to show that demand is excused under Maryland law. *See Sekuk Global Enters. Profit Sharing Plan v. Kevenides*, No. 24-C-03-007496, 2004 Md. Cir. Ct. LEXIS 20, at *9-11 (Md. Cir. Ct. May 25, 2004) (finding plaintiff had not adequately alleged irreparable harm sufficient to excuse demand where, *inter alia*, there was no showing it lacked an adequate remedy at law).

## **CONCLUSION**

For the reasons stated above and in the Opening Brief, defendants' motion to dismiss should be granted in all respects.

Dated:  Nashville, Tennessee
       April 5, 2013

Respectfully submitted,

s/ Seth M. Schwartz w/permission
Seth M. Schwartz (admitted pro hac)
Jeremy A. Berman (admitted pro hac)
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522
(212) 735-3000
(212) 735-2000 Facsimile
Seth.Schwartz@skadden.com
Jeremy.Berman@skadden.com

s/ John R. Jacobson
Steven A. Riley (BPR #6258)
John R. Jacobson (BPR #14365)
Milton S. McGee, III (BPR #24150)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 Facsimile
sriley@rwjplc.com
jjacobson@rwjplc.com
tmcgee@rwjplc.com

Attorneys for Defendants
iShares Trust; iShares, Inc., the ETF Defendants, Blackrock Fund Advisors; Blackrock Institutional Trust Company, N.A.; Robert S. Kapito; and Michael Latham

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss the Complaint, was served via the Court's ECF system on this 5th day of April, 2013, upon:

James Gerard Stranch, III
J. Gerard Stranch IV
Michael G. Stewart
Karla M. Campbell
Branstetter, Stranch & Jennings, PLLC
227 Second Avenue North
Nashville, TN 37201
jstranch@branstetterlaw.com
gstranch@branstetterlaw.com
mstewart@branstetterlaw.com
kcampbell@branstetterlaw.com

C. Mark Pickrell
William G. Brown
Andrew E. Hill
The Pickrell Law Group, P.C.
5701 Old Harding Pike
Suite 200
Nashville, TN 37205
mark.pickrell@pickrell-law.net
will.brown@pickrell-law.net
drew.hill@pickrell-law.net

Jeremy Berman
Seth M. Schwartz
Skadden, Arps, Slate,
   Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522
jeremy.berman@skadden.com
seth.schwartz@skadden.com

John M. Tipps
John C. Hayworth
Emily B. Warth
Walker, Tipps & Malone
2300 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2415
mtipps@walkertipps.com
jhayworth@walkertipps.com
ewarth@walkertipps.com

Bruce H. Schneider
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038-4982
bschneider@stroock.com

Brian J. Robbins
Craig W. Smith
Jenny L. Dixon
Robbins Arroyo LLP
600 B. Street, Suite 1900
San Diego, CA 92101
Tel: (619) 525-3990
brobbins@robbinsarroyo.com
csmith@robbinsarroyo.com
jdixon@robbinsarroyo.com

                              s/ John R. Jacobson