UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LABORERS' LOCAL 265 PENSION FUND and PLUMBERS AND PIPEFITTERS LOCAL NO. 572 PENSION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>iSHARES TRUST; iSHARES, INC.; iSHARES RUSSELL MIDCAP INDEX FUND; iSHARES MSCI EAFE INDEX FUND; iSHARES MSCI EMERGING MARKETS INDEX FUND; iSHARES RUSSELL 2000 GROWTH INDEX FUND; iSHARES CORE S&P MID CAP INDEX FUND; iSHARES CORE S&P SMALLCAP INDEX FUND; iSHARES DOW JONES US REAL ESTATE INDEX FUND; BLACKROCK FUND ADVISORS; BLACKROCK INSTITUTIONAL TRUST COMPANY, N.A., ROBERT S. KAPITO; MICHAEL LATHAM; ROBERT H. SILVER; GEORGE G.C. PARKER; JOHN E. MARTINEZ; CECILIA H. HERBERT; CHARLES A. HURTY; JOHN E. KERRIGAN; and MADHAV V. RAJAN,<br><br>Defendants. | Case No. 3:13-cv-00046<br><br>Judge Trauger |

## MEMORANDUM

Pending before the court are two Motions to Dismiss the Complaint in this derivative action. Defendants iShares Trust and iShares, Inc. ("iShares"); iShares Russell Midcap Index Fund, iShares MSCI EAFE Index Fund, iShares MSCI Emerging Markets Index Fund, iShares Russell 2000 Growth Index Fund, iShares Russell 2000 Value Index Fund, iShares Core S&P

1

Mid Cap Index Fund, iShares Core S&P Smallcap Index Fund, and iShares Dow Jones U.S. Real Estate Index Fund (the "ETF Defendants" or the "iShares funds"); BlackRock Fund Advisors and BlackRock Institutional Trust Company, N.A., (together with iShares and the ETF Defendants, the "Institutional Defendants"); and Robert S. Kapito and Michael Latham (the "Interested Director Defendants") jointly filed a Motion to Dismiss on March 11, 2013. (Docket No. 21.) Defendants Robert H. Silver, George G.C. Parker, John E. Martinez, Cecilia H. Herbert, Charles A. Hurty, John E. Kerrigan, and Madhav V. Rajan (the "Independent Director Defendants," and together with the Interested Director Defendants, the "Director Defendants") jointly filed a Motion to Dismiss on March 12, 2013. (Docket No. 24.) The plaintiffs filed a consolidated Response in opposition to these motions (Docket No. 37), and the Institutional and Interested Director Defendants filed a Reply (Docket No. 40), to which the plaintiffs filed a Sur-Reply with the court's permission (Docket No. 44). For the reasons discussed herein, the defendants' motions will be granted and the Complaint will be dismissed without prejudice.

## BACKGROUND[1]

Broadly, this case involves exchange-traded funds and allegations of improper practice by the companies hired to advise and manage the funds in revenue-generating securities lending transactions. Plaintiffs Laborers' Local 265 Pension Fund and Plumbers and Pipefitters Local No. 572 Pension Fund (the "Pension Funds") are investors in mutual funds issued by defendants

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1) and the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

iShares Trust and iShares, Inc. A mutual fund is an investment vehicle that collects money from many investors and invests it in securities such as stocks, bonds, and short-term money market instruments. *See Burks v. Lasker*, 441 U.S. 471, 480 (1979). The plaintiffs invest in these funds for the benefit of their participants, who depend on pension benefits for their retirements. Each Institutional Defendant performs a function related to the management of the mutual funds. The Director Defendants serve as Trustees and Directors on the iShares Trust and iShares, Inc. leadership boards and are charged with protecting the interests of iShares investors. For example, the Director Defendants are tasked with approving agreements among the iShares funds, their advisors, and their agents for securities lending transactions.

The Complaint targets the behavior of two particular Institutional Defendants: BlackRock Institutional Trust Company, N.A., a national banking association that provides securities lending services to the iShares investment companies and other funds ("BTC"), and BlackRock Fund Advisors, which manages and advises the iShares funds with respect to their investment activities ("BFA"). BFA is registered with the Securities and Exchange Commission ("SEC" or the "Commission") under the Investment Advisers Act of 1940 ("IAA") and serves as an investment advisor to the iShares funds under Investment Advisory Agreements among BFA, iShares Trust, and iShares, Inc. BFA hired its affiliate, BTC,[2] as an agent to manage securities lending transactions on behalf of the iShares funds. BTC is registered with the SEC under the Investment Company Act of 1940 ("ICA"). BTC performs this role pursuant to an Amended and Restated Securities Lending Agency Agreement ("Lending Agreement") among BTC, the

---

[2] BTC is the corporate parent of BFA. Both BTC and BFA are subsidiaries of BlackRock, Inc., which is not a named party to this action.

3

iShares companies, and the iShares funds. The plaintiffs' underlying grievance is that the defendants were wrongly enriched through these agreements at the expense of investors and thus violated various provisions of the ICA.

## I. The Lending Agreement and Short-Selling

The plaintiffs allege that the Lending Agreement provides excessive compensation to BFA and BTC. This compensation is derived from revenue generated by certain securities lending transactions, also known as "short-selling transactions." A short-sell transaction occurs when a fund sells its securities to a third party through a "borrower" of the securities at the direction of the borrower. The borrower initiates the transaction in order to profit from a decline in the price of the securities and benefits from purchasing back the shares that it sold at a lower price and returning those sales to the lender. (Docket No. 1 ¶¶ 44-48.) Mutual funds like the iShares funds often use securities lending agents to manage these transactions and may use independent agents or agents who are affiliated with the fund's sponsor (in this case, BFA). BFA employs BTC as the iShares funds' lending agent. BTC acts as the middleman between short-sellers and other borrowers who want to borrow securities held by iShares in order to generate revenue. (Docket No. 1 ¶ 14.) As an affiliated agent, BTC is subject to heightened oversight by the SEC because its "close relationship with the sponsor creates inherent conflicts of interest." (Docket No. 1 ¶¶ 53-55.)

The Lending Agreement provides that BTC shall receive a fee of 35% of the net revenue earned from short-selling transactions in exchange for its services. The plaintiffs allege that an additional 5% of the short-selling revenue is awarded to the BlackRock affiliates for administrative fees, resulting in a 40/60 division of revenue between the BlackRock affiliates and

4

the iShares funds. (Docket No. 1 ¶¶ 66-73.) The Pension Funds contend that the 35% share granted to BTC under the Lending Agreement and 40% total revenue compensation to BFA and BTC is excessive compared to peer mutual funds and, in particular, compared to funds which employ unaffiliated lending agents.

## II. The SEC Exemption Order

An agency relationship between affiliates like BFA and BTC is typically prohibited by the text of Sections 17(a) and 17(d) of the ICA. However, Section 17(b) of the ICA permits entities to apply for an exemption from the Act's prohibitions with respect to such an affiliated relationship. 15 U.S.C. § 80a-17. The Act provides broad discretion to the SEC to exempt parties from provisions of the statute upon application. 15 U.S.C. § 80a-6. The parties agree that BFA's and BTC's predecessors-in-interest received such an exemption in 2002 from the Commission. *Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,878, 2002 SEC LEXIS 3327 (Dec. 27, 2002) (the "SEC Exemption Order"); *Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,840, 2002 SEC LEXIS 3095 (Dec. 2, 2002) (the "SEC Exemption Notice").[3] The SEC Exemption Order, titled "Order Under Sections 6(c) and 17(b) of the Investment Company Act of 1940," approved an application filed by BFA's and BTC's predecessors-in-interest. The approved application includes the following terms:

---

[3] The SEC Exemption Notice and Order are referenced in the Complaint and in both parties' pleadings. They are attached to the Institutional Defendants' Motion to Dismiss the Complaint. (Docket No. 22 Ex. 1 at 273-80.) Both parties have relied upon the language therein, over which the court takes judicial notice.

5

3. Applicants propose that each Fund adopt the following procedures to ensure that the proposed fee arrangement and other terms governing the relationship with [BTC's predecessor] BGI, as lending agent, will meet the standards of rule 17d-1:

a. In connection with the approval of BGI as lending agent for a Fund and implementation of the proposed fee arrangement, a majority of the board of directors or trustees (the "Board"), including a majority of the directors or trustees who are not "interested persons" within the meaning of Section 2(a)(19) of the Act (the "Disinterested Members"), of the Fund will determine that (i) the contract with BGI is in the best interest of the Fund and its shareholders; (ii) the services performed by BGI are required for the Fund; (iii) the nature and quality of the services provided by BGI are at least equal to those provided by others offering the same or similar services; and (iv) the fees for BGI's services are fair and reasonable in light of the usual and customary charges imposed by others for services of the same nature and quality.

### III. <u>The Action</u>

The plaintiffs commenced this derivative action against the defendants on January 18, 2013, asserting claims under the ICA, 15 U.S.C. 80a-1 *et seq.*, and seeking an injunction enjoining the defendants from the continued lending of iShares securities (absent a new and fairly negotiated contract with an independent lending agent); recovery of excessive compensation paid to the advisors; rescission of the Lending Agreement and the Investment Advisory Agreements among BFA, iShares Trust, and iShares, Inc.; and recovery of additional damages to the iShares funds for the benefit of the iShares investors. The Institutional Defendants and Director Defendants jointly filed a Motion to Dismiss the Complaint (Docket No. 22), which the Independent Director Defendants joined (Docket No. 24).

### ANALYSIS

The Pension Funds assert their claims under three sections of the ICA: Section 36(b), Section 47(b), and Section 36(a). They assert each claim derivatively on behalf of nominal defendants iShares, Inc., iShares Trust, and the ETF Defendants. The defendants have moved to

6

dismiss the plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1. The defendants contend that the claims asserted in the Complaint must be dismissed because the plaintiffs fail to plead threshold requirements for claims under the ICA. In particular, the defendants assert that (i) the plaintiffs' Section 36(b) claim is precluded by an exception included in the statutory text and the defendants' SEC Exemption Order; (ii) no private right of action exists under Sections 47(b) and 36(a); and (iii) even if the plaintiffs did possess private rights of action for Counts II and III of the Complaint, they have failed to meet the pre-suit demand requirements set forth by Fed. R. Civ. P. 23.1. Before turning to the merits of the defendants' motions, the court will briefly describe the federal statute under which the plaintiffs have asserted their claims.

## I. The Investment Company Act of 1940

The Investment Company Act of 1940 regulates investment companies, including mutual funds. *See Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 338 (2010). "Congress adopted the [Act] because of its concern with the potential for abuse inherent in the structure of investment companies." *Jones*, 559 U.S. at 339 (citing *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 536 (1984)). The Act provides various safeguards for shareholders in response to the risk of abuse, including limitations on affiliations of fund directors with investment advisors and a requirement that fees for advisors be approved by the directors and shareholders of the funds. *Id.* In 1970, Congress amended the Act to "strengthen the 'cornerstone' of the Act's efforts to check conflicts of interest, [and ensure] the independence of mutual fund boards of directors, which negotiate and scrutinize advisor compensation." *Id.* (citing *Burks*, 441 U.S. at 482). In addition to a limited private right of action enumerated in Section 36(b), the Act includes a broad provision

7

empowering the SEC to bring actions in a federal district court to seek civil penalties or injunctive relief against individuals or entities that violate the ICA.  15 U.S.C. § 80a-41(d)-(e).

## II.  Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.

8

## III. The Investment Company Act

### A. Excessive Compensation to BFA and BTC

Congress amended the ICA in 1970 and created Section 36(b). 15 U.S.C. § 80a-35(b). This subsection imposes a fiduciary duty on investment advisors with respect to compensation and grants shareholders an express private right of action to seek relief from breaches of fiduciary duty resulting in excessive compensation. *Jones*, 559 U.S. at 340 (internal citations omitted); 15 U.S.C. § 80a-35(b). The statute includes exceptions to its own rule. The defendants argue that one such exception, Section 36(b)(4), is fatal to the plaintiffs' claim, and the court agrees.[4]

Section 36(b)(4) provides that "subsection [Section 36(b)] shall not apply to compensation or payments made in connection with transactions subject to section 80a-17 of this title, or rules, regulations, or *orders thereunder*." 15 U.S.C. § 80a-35(b)(4) (emphasis added). As discussed above, the Commission expressly granted BFA and BTC an "order [of exemption] *under* Section 6(c) and 17(b)" of the Act from Sections 17(a) and 17(d), and thereby approved the joint transaction among BFA, BTC, and the iShares entities on terms set forth by the SEC Exemption Notice.[5] By the plain text of Section 36(b)(4), the SEC Exemption Order removes the transaction at issue from scope of Section 36(b).

---

[4] The plaintiffs do not assert a separate breach of fiduciary duty claim against the Director Defendants, despite alleging that the Director Defendants approved a fee structure that was disproportionately large and "about three times more than what is typical in the industry." (Docket No. 1 ¶ 73.)

[5] Section 6 of the ICA grants the SEC broad discretion to issue exemptions related to provisions of the ICA. 15 U.S.C. § 80a-6.

9

The plaintiffs do not cite to any case or authority that might rescue their Section 36(b) claim from dismissal pursuant to the statutory text of Section 36(b)(4) and, instead, rely on an SEC No-Action Letter published in 1995. *See In re Norwest Bank Minnesota, N.A. and Society Nat'l Bank*, SEC No-Action Letter (pub. avail. May 25, 1995).[6] But, as the defendants point out, the *Norwest* letter is distinguishable from the circumstances here and cannot salvage the plaintiffs' claim. In *Norwest*, the Commission advised two investment companies registered under the ICA that it would not recommend action pursuant to ICA Sections 17(d) or 17(e), or Rule 17d-1 thereunder if the investment companies were to compensate affiliates for services performed as "custodians" of funds to which the investment companies were advisors. *Id.* at 2-7. Unlike here, the companies requesting a "no action" order from the Commission did not possess an order granting exemption under Section 17. Consequently, at no point does the *Norwest* letter discuss Section 36(b)(4). Additionally, the *Norwest* petitioners sought relief from the Commission related to an entirely different kind of compensation. The *Norwest* petitioners sought approval for the exchange of fees related to "solely ministerial functions." *Id.* The defendants here admit that BlackRock received fees reflecting a percentage of revenue earned from the securities lending transactions of iShares—a much more involved affiliation than the purely custodial functions at issue in *Norwest*. And critically, the defendants do not, as the plaintiffs argue, contend that their securities lending transactions fall outside of Section 36(b) because of the nature of the transactions; the defendants simply submit that the plain text of

---

[6] The *Norwest* letter is attached to the plaintiffs' Opposition brief. (Docket No. 37 Ex. A.)

Section 36(b)(4) directs that the BFA and BTC transactions, previously approved by the Commission *under* Section 17, are exempt from a Section 36(b) action.

The express language of Section 36(b)(4) commands that the plaintiffs' Section 36(b) claim must be dismissed as to all defendants.[7] *See Rohrbaugh v. Inv. Co. Inst.*, No. Civ. A. 00-1237, 2002 WL 31100821, at *3 n.8 (D.D.C. July 2, 2002) (noting that Section 36(b) "prohibits claims for any conduct covered by section 17"); *see also Lessler v. Little*, 857 F.2d 866, 874 (1st Cir. 1988) ("Section 36(b)(4) of the Investment Company Act makes it clear that rights and remedies under section 17 and section 36(b) are intended to be mutually exclusive.").

### B. Existence of a Private Right of Action under Section 47(b)

Section 47(b) provides that a contract "that is made, or whose performance involves, a violation of [the ICA] . . . is unenforceable by either party . . . unless a court finds that under the circumstances, enforcement would produce a more equitable result." 15 U.S.C. § 80a-46(b)(1). If such a contract has been performed, a court "may not deny rescission at the instance of any party unless such court finds that under the circumstances the denial of rescission would produce a more equitable result than its grant." *Id.* § 80a-46(b)(2). Unlike Section 36(b), Section 47(b) does not expressly create a private right of action for investors. The Pension Funds argue that a private right of action is implied by Section 47(b)'s authorized remedy of rescission and also

---

[7] The defendants argue that, even if the court disregarded the SEC Exemption Order and permitted the plaintiffs' Section 36(b) claim to proceed against the Institutional Defendants, the plaintiffs have no claim against the Director Defendants because the plaintiffs fail to allege that any of the individual defendants personally received any portion of the lending revenue. The court need not reach this determination because it has dismissed the claim pursuant to Section 36(b)(4).

11

predicate violations of the ICA, which they allege may be enforced through Section 47(b). The plaintiffs identify four alleged violations of the ICA by defendants: Sections 17(d), 17(e), 36(a), and 36(b). In order to state a claim under Section 47(b), the plaintiffs must demonstrate that they have a private right of action to enforce a predicate violation of the statute. *See, e.g.*, *Hamilton v. Allen*, 396 F. Supp. 2d 545, 558-59 (E.D. Pa. 2005) ("A plaintiff asserting a claim under the Investment Company Act may seek relief under Section 47 only after a violation of some other section of the Act has been established."); *see also Mutchka v. Harris,* 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) ("The parties agree that Section 47(b) is remedial in nature and does not itself provide a cause of action."). They seek rescission of the Investment Advisory Agreements among BFA, iShares Trust, and iShares Inc., the Lending Agreement, and "any other agreements obligating iShares or any Fund to pay BTC or BFA or affiliates fees arising out of securities lending transactions" (together, the "Contracts") based upon these predicate violations. (Docket No. 1 ¶ 173.)

The defendants disagree that Section 47(b) creates a private right of action for investors, but they concede that the statute provides "'a mechanism for enforcing individual rights secured elsewhere.'" (Docket No. 22 at 16 (quoting *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006).) However, the defendants argue that the plaintiffs' Section 47(b) claim must be dismissed because (i) Sections 17(d), 17(e), and 36(a) do not include private rights of action, and (ii) the plaintiffs' predicate Section 36(b) claim is barred by its statutory text. The court agrees with these assertions.

The defendants primarily rely upon the United States Supreme Court's holding in *Alexander v. Sandoval*, 532 U.S. 275 (2001), and the Second Circuit's application of *Sandoval* to

12

the ICA a year later in *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002).[8] *Sandoval* "strictly limited the ability of federal courts to imply private rights of action in federal statutes." *Smith v. Oppenheimer Funds Distrib., Inc.*, 824 F. Supp. 2d 511, 518 (S.D.N.Y. 2011) (citing *Sandoval*, 532 U.S. at 286). The *Sandoval* Court cautioned courts against deriving implied rights from congressional silence, urging that, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Sandoval* at 286. The Court ordered that congressional intent is necessary to create an implied right of action, and therefore, courts must engage in statutory interpretation to determine the existence of implied rights. *Id.* Where an explicit right of action is absent from a statute, a strong presumption exists that such a right does not exist. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979) ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (declining to find implied rights and dismissing private plaintiffs' claims under Sections 34(b), 36(a), and 48(a) of the ICA); *Olmsted*, 283 F.3d at 436 (declining to imply private rights of action in Sections 26(f) and 27(i) of the ICA pursuant to the *Sandoval* factors); S*mith*, 824 F. Supp. 2d at 518 ("Without Congressional intent expressed in the statute, a cause of action does not exist and the courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.").

---

[8] The plaintiffs accurately note that the SEC submitted an amicus brief in *Olmsted* that argued that an implied private right of action exists under Section 47(b), but the court cannot overlook the fact that the Second Circuit and all subsequent courts examining the issue have declined to adopt the SEC's position.

In assessing whether the presumption against implied private rights should be displaced, the *Sandoval* Court directed that courts should examine factors such as whether the statute employs "rights-creating language," whether the statute provides for other remedies or enforcement mechanisms, and whether the statute contains other explicit private rights of action to enforce other sections. *See Sandoval*, 532 U.S. at 288-90 (concluding that "rights-creating language" is critical to finding implied rights of action and that Congress's "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others"); *Olmsted*, 283 F.3d at 433 (finding that statutes that focus on prohibited actions by insurance companies and do not mention the protected individuals create "no implication of an intent to confer rights on a particular class of persons") (internal citations omitted). Tellingly, both parties here cite a litany of cases following *Sandoval* that have declined to imply private rights of action from Section 47(b) and various predicate violations under the ICA. *See, e.g.*, *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 185-87 (3d Cir. 2012) (upholding dismissal of claim seeking to render unenforceable under Section 47(b) a contract which allegedly violated Section 26(f) of the ICA), *cert. denied*, 2012 WL 3309364 (2012); *Northstar Financial Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1122 (9th Cir. 2010) (affirming dismissal of claims under Sections 1, 33, and 44 of the ICA because the statutes lack rights of private enforcement); *Bellikoff*, 481 F. 3d at 116-17 (dismissing claim for violations of Sections 34(b), 36(a), and 48(a) of the ICA); *see also Smith,* 824 F. Supp. at 518; *In re Regions Morgan Keegan Secs.*, 743 F. Supp. 2d 744, 761-62 (W.D. Tenn. 2010) (dismissing claims under Sections 13, 22, 30, and 34(b) of the ICA).

14

The plaintiffs urge the court to disregard these cases and, instead, rely on a decades-old Supreme Court case that analyzed the ICA's companion statute, the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 *et seq.* ("IAA"), *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). The Supreme Court concluded in *Transamerica* that the statutory language of Section 215 of the IAA—a rescission statute analogous to Section 47(b) of the ICA—implied a private right of action for rescission of a contract that violated the IAA. *Transamerica*, 444 U.S. at 18. But, as other courts have explained when distinguishing the ICA from the IAA, nowhere in the IAA did Congress expressly provide for any private cause of action. *See id.*; *Santomenno*, 677 F.3d at 186; *Smith*, 824 F. Supp. 2d at 520. The *Transamerica* Court observed that, where a statute contains private causes of action in other sections (such as with the ICA's Section 36(b)), "'it is highly improbable that Congress absentmindedly forgot to mention an intended private action.'" *Santomenno*, 677 F.3d at 186-87 (distinguishing *Transamerica* and dismissing claim under Section 47(b) of the ICA) (quoting *Transamerica*, 444 U.S. at 20); *Smith*, 824 F. Supp. 2d at 520 (discussing *Transamerica* and denying implied private right of action under Section 47(b) for violation of section 36(a)). Therefore, a strong presumption exists that Congress did not intend for an implied private right of action in Section 47(b), because the legislature meant for the express right of action set forth in Section 36(b) of the ICA to be exclusive, and "'there was no similar exclusive, express right of action in the IAA.'" *Santomenno*, 677 F.3d at 186 (quoting *Tarlov v. Paine Weber Cashfund, Inc.*, 559 F. Supp. 429, 438 (D. Conn. 1983) (permitting Section 36(b) claim to go forward where defendants did not possess an exemption under Section 17 but dismissing additional claims, including Section 47(b) claim, for allegations of excessive compensation because plaintiffs did not possess a private right of action)).

15

Applying a *Sandoval* analysis to the plaintiffs' allegations, the Pension Funds' claims fail. The plaintiffs charge defendants with violations of Sections 17(d), 17(e), and 36(a) of the ICA. Not one of these subsections of the Act creates substantive rights of action for investors. The plaintiffs also ask the court to permit a Section 47(b) claim to enforce Section 36(b), but, for the reasons described above, the defendants' transactions are exempt pursuant to Section 36(b)(4).

Section 17(d) states: "It shall be unlawful for any affiliated person . . . for a registered investment company . . . to effect any transaction in which such registered company . . . is a joint participant with such [affiliate] in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 80a-17(d). Section 17(e) provides that "it shall be unlawful for any affiliated person of a registered investment company . . . to accept from any source any compensation for the purchase or sale of any property to or for such registered company." 15 U.S.C. § 80a-17(e). Section 36(a), titled "Civil actions by Commission," authorizes the SEC "to bring an action in the proper district court . . . alleging that a person" breached a fiduciary duty "involving personal misconduct in respect of any registered investment company" for which such person served as an officer, director, or underwriter. 15 U.S.C. § 80a-35(a). These subsections do not include "rights-creating language." *Sandoval*, 532 U.S. at 290. Sections 17(d) and 17(e) focus on prohibited behavior by affiliated companies. It is well-settled that where statutes "focus on the person regulated rather than the individuals protected," there is "no implication of [a congressional] intent to confer rights on a particular class of persons." *Santomenno*, 677 F.3d at 187 (citing *Sandoval*, 532 U.S. at 289); *Smith*, 824 F. Supp. 2d at 518. Likewise, Section 36(a) expressly authorizes the Commission, and not shareholders, to enforce

16

its terms. Given the plain language of the statute, the court cannot import a shareholders' right of action from a statute that only enumerates substantive enforcement rights for the Commission.

In addition to the absence of rights-creating language in Sections 17(d), 17(e), and 36(a), the presumption against an implied right of action is bolstered by the ICA's express provision of enforcement power to the SEC. Section 42 of the Act, titled "Enforcement of subchapter," grants the SEC broad power to investigate violations of the ICA, conduct hearings and request productions, and to bring actions for injunction and enforcement of the ICA in the district courts. 15 U.S.C. § 80a-41.

Moreover, to the extent that the plaintiffs' other ICA claims fail, their Section 47(b) claim necessarily must fail because a violation of the Act is a predicate to the remedy provided therein. Indeed, courts have held that the language of Section 47(b) creates "a remedy rather than a distinct cause of action or basis of liability." *Stegall v. Ladner,* 394 F. Supp. 2d 358, 378 (D. Mass. 2005); *see also Mutchka*, 373 F. Supp. 2d at 1027. And despite the plaintiffs' insistence that Section 47(b)'s authorized remedy indicates a right of action, it is settled law in this circuit that a remedy alone does not create a substantive right. *See Johnson*, 446 F.3d at 618-21 (concluding that Section 1983 provides a remedy for those denied rights under federal statutes, but only provides a mechanism for enforcing individual rights secured elsewhere).

Finally, although the plaintiffs argue that other federal courts have hinted at a private right of action under Section 47(b), they do not cite a single post-*Sandoval* case where a federal court has drawn a private right of action from Section 47(b)—standing alone or among predicate violations of the ICA. The Pension Funds cannot overcome the lack of any substantive right in

17

Sections 47(b), 17(d), 17(e), and 36(a) of the ICA, nor can they defeat the plain language of Section 36(b)(4). Accordingly, their claim under Section 47(b) must be dismissed.

### C. Section 36(a)

Section 36(a) of the Act authorizes the Securities and Exchange Commission to enforce breaches of fiduciary duties involving "personal misconduct." 15 U.S.C. § 80a-35(a). The statute expressly permits the SEC to bring an action to enforce the provision. The plaintiffs allege that the defendants breached their fiduciary duties and engaged in misconduct by using investor assets for the benefit of their operations without compensating the iShares investors at a fair and reasonable level.

The plaintiffs admit that, "since *Sandoval*, the trend has been to deny a private right of action under Section 36(a)" but ask the court to uphold legislative intent by permitting their claim to proceed. (Docket No. 37 at 20.) But, "where the text of a statute is unambiguous, 'judicial inquiry is complete except in rare and exceptional circumstances,' and 'legislative history instructive only upon the most extraordinary showing of contrary intentions.'" *Olmsted*, 283 F.3d at 435 (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1985)). As the Ninth Circuit has explained, "[i]t is evident from the text of the ICA that Congress knew how to create a private right of action to enforce a particular section of the Act when it wished to do so." *Northstar*, 615 F.3d at 1117. If Congress had intended, as the plaintiffs argue, for Section 36(a) to include a right of action for shareholders, it would have expressly authorized private suits—as it did in subsection (b) of the very same subsection of the Act. *See Jacobs v. Bremner*, 378 F. Supp. 2d 861, 866 (N.D. Ill. 2005) ("Because the plain statutory text of Section 36(a) provides a right of action only for the SEC, the inquiry as to whether a private right of action exists ends

18

there and must be answered in the negative."); *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222, 232 (S.D.N.Y. 2005) ("The absence of rights-creating language, the existence of an alternative method of enforcement, and the existence of an explicit private right of action for another provision of the statute creates the strong presumption that Congress did not intend to create private rights of action under [Section 36(a)]."); *Hamilton*, 396 F. Supp. 2d at 554-55 (dismissing claim under Section 36(a) pursuant to *Sandoval*); *see also Mutchka*, 373 F. Supp. 2d at 1027. As another court explained: "[D]espite courts having found an implied right of action under § 36(a) prior to *Sandoval,* the Supreme Court decision simply cannot be sidestepped. The statute, as written, provides that the SEC can enforce § 36(a) and that both the SEC and private investors can enforce § 36(b)." *Stegall*, 394 F. Supp. 2d at 371.

The Pension Funds have failed to overcome the strong presumption that Congress did not intend to create a private right of action under Section 36(a), and their claim must be dismissed.

## IV. Going Forward

In light of the foregoing, the court will grant the defendants' motions and dismiss each of the plaintiffs' claims asserted against them.[9] However, the dismissal of these claims will be without prejudice. The plaintiffs shall be given until September 17, 2013 to file a motion for leave to amend the Complaint or to otherwise move for an extension of this deadline upon a showing of good cause. If neither motion is filed by the aforementioned deadline, the court will enter a final judgment in this case dismissing the plaintiffs' claims with prejudice.

---

[9] Because the court holds that the ICA does not provide for a private right of action for violations of Sections 47(b) and 36(a), it need not address the defendants' alternative arguments for dismissing the Complaint.

## CONCLUSION

For the reasons discussed herein, the Defendants' Motions to Dismiss the Complaint will be **GRANTED**.

An appropriate order will enter.

                                                                   _____
                                                                   ALETA A. TRAUGER
                                                                   United States District Judge